596 So.2d 1197 (1992)
Samuel Geraldo VELEZ, Appellant/Cross-Appellee,
v.
The STATE of Florida, Appellee/Cross-Appellant.
No. 91-792.
District Court of Appeal of Florida, Third District.
April 7, 1992.
*1198 Bennett H. Brummer, Public Defender, and Robert Kalter, Asst. Public Defender, for appellant/cross-appellee.
Robert A. Butterworth, Atty. Gen., and Fariba N. Komeily, Asst. Atty. Gen., for appellee/cross-appellant.
Before BASKIN, JORGENSON and GODERICH, JJ.
PER CURIAM.
Samuel Velez appeals from judgments of conviction and sentences for manslaughter of a police officer, armed burglary of an occupied dwelling, grand theft, and attempted manslaughter of a police officer. We affirm.
Velez and two codefendants, Griffin and Tarallo, were charged with various offenses stemming from the murder of a police officer and the burglary of an occupied motel room. Tarallo entered into a plea agreement. Before trial, Velez moved to sever his trial from Griffin's to avoid problems arising under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (defendant's right of cross-examination guaranteed by Sixth Amendment violated by admission, at joint trial before single jury, of out-of-court statement of nontestifying codefendant that implicated defendant). The trial court granted the motion to sever but, instead of conducting two entirely separate trials, impaneled two juries. When Griffin's statement was introduced, Velez's jury was removed *1199 from the courtroom. The jury was also excused when Tarallo testified during the State's case against Griffin, Velez's codefendant.
The jury found Velez guilty of manslaughter of a police officer, burglary, grand theft, and attempted manslaughter of a police officer. The recommended guidelines sentence was 12-27 years. The trial court sentenced Velez to 50 years imprisonment with a minimum mandatory of ten years on the manslaughter conviction; life imprisonment for armed burglary; five years for grand theft; and fifteen years for attempted manslaughter. As reasons for the departure sentence, the trial court noted that the manslaughter victims were police officers; that the armed burglary was of an occupied dwelling; and that the defendant had displayed an escalating pattern of criminal activity.

The Dual Juries
On appeal, Velez argues that the trial court's use of a dual jury system violated his right to a fair trial. He does not argue that impaneling the two juries was inherently prejudicial, nor does he complain of the admission of any inadmissible evidence. Rather, he claims that the trial court excused the Velez jury during testimony that would have been helpful to his defense. During the State's case against Griffin, Tarallo testified as to matters that Velez claimed went to Velez's defense of withdrawal from the crime. Velez wanted his jury to remain in the courtroom during that testimony. Because his jury was removed, Velez had to call Tarallo during his case and argues now that he was prejudiced by doing so as he lost his right to final closing argument by calling a witness. We find that argument without merit. The right to final closing argument must be requested in order to be preserved. Bivins v. State, 313 So.2d 471 (Fla. 4th DCA 1975), cert. denied, 328 So.2d 840 (Fla. 1976). During arguments relating to the presentation of Tarallo's testimony, Velez never requested final closing argument and cannot now complain. Moreover, error, if any occurred, was harmless as Velez called a witness before Tarallo and did not lose the right to final closing argument simply because he called Tarallo.
Although the use of dual juries is innovative and requires great diligence by the trial court, it is a useful exercise in judicial economy. The multiple jury procedure[1] was designed to avoid Bruton problems and other general problems of prejudice that arise from joint trials. See generally David C. Minneman, Annotation, Propriety of Use of Multiple Juries at Joint Trial of Multiple Defendants in State Criminal Prosecution, 41 A.L.R.4th 1189 (1985).
The use of two juries, while cited as being somewhat confusing, is essentially two separate trials in which portions of the same evidence is admissible. Consequently most courts seat both juries for opening statements and for any evidence or testimony admissible in both trials. Then each jury is excused for evidence that is not admissible in its corresponding trial. In that manner any overlapping testimony need only be presented once, resulting in substantial savings of time, without prejudicing any party involved.
Gaynes, Two Juries/One Trial  Panacea of Judicial Economy or Personification of Murphy's Law, 5 Am.J.Trial Advoc. 285 (1981). Although various courts have disapproved the practice,[2] "no court, state or federal, has held the procedure to be inherently prejudicial, nor has any court to date found specific prejudice warranting reversal in the matter before it." People v. Harris, 47 Cal.3d 1047, 255 Cal. Rptr. 352, 767 P.2d 619, 635 (1989). The two Florida *1200 courts that have addressed the issue affirmed convictions that followed the use of dual juries. Roberts v. State, 573 So.2d 964 (Fla. 2d DCA 1991); Feeney v. State, 359 So.2d 569 (Fla. 1st DCA 1978). In Feeney, the first district remarked that
[t]he law is, and must be, dynamic and not static. Procedural law is no exception. Experience comes about as a result of experiment. A trial judge has very broad discretion in the procedural conduct of trials. In the absence of demonstrated prejudice, we are loathe to disapprove the novel procedure [dual juries] employed sub judice.
359 So.2d at 570. Although the use of dual juries is rife with the potential for error or prejudice, none occurred in the conduct of this trial. The trial court took great pains to ensure that each defendant's jury only heard evidence that was admissible against that defendant. The State, the defense, and the trial court engaged in extensive discussions regarding the implementation of safeguards surrounding the use of the dual jury system. Accordingly, we affirm the judgments of conviction.

The Departure Sentence
The trial court gave three reasons for departing from the sentencing guidelines. We find one of those reasons valid and, therefore, affirm the sentence. § 921.001(5), Fla. Stat. (1989). Velez's conduct revealed an escalating pattern of criminal activity. He had three juvenile adjudications of delinquency that occurred within three years of this offense. The progression of offenses  from nonviolent auto theft, to possession of a firebomb, to resisting arrest with violence  clearly show an escalating pattern of criminal conduct. Although all of the offenses that comprised the pattern were juvenile offenses, they can form the basis for the trial court's departure from the sentencing guidelines. See Simmons v. State, 570 So.2d 1383 (Fla. 5th DCA 1990) (prior record, consisting solely of juvenile offenses, sufficient to justify departure sentence where offenses showed persistent, escalating pattern of criminal conduct or behavior); Morgan v. State, 550 So.2d 151 (Fla. 3d DCA 1989) (juvenile offenses formed basis for finding of escalating pattern of criminal conduct)[3].
Accordingly, we affirm both the judgments of conviction and the sentences.
Affirmed.[4]
NOTES
[1] The Supreme Court of Maine recently affirmed a conviction that followed a dual trial, four-jury proceeding. State v. Bowman, 588 A.2d 728 (Me. 1991); see also People v. Knight, 139 Ill. App.3d 188, 93 Ill.Dec. 521, 486 N.E.2d 1356 (1985) (triple-jury proceeding; no prejudice found), cert. denied, 480 U.S. 905, 107 S.Ct. 1346, 94 L.Ed.2d 518 (1987).
[2] See, e.g., State v. Lambright, 138 Ariz. 63, 673 P.2d 1 (1983), cert. denied, 469 U.S. 892, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984); Scarborough v. State, 50 Md. App. 276, 437 A.2d 672 (1981).
[3] It is not the juvenile offenses themselves that justified departure, but the pattern of increasing violence that they formed. Cf. Blue v. State, 541 So.2d 736 (Fla. 1st DCA 1989) (three juvenile convictions insufficient to support departure).
[4] Because of our disposition of the main appeal, we do not reach the issues raised by the State's cross-appeal.