958 So.2d 523 (2007)
SOURCETRACK, LLC, a Nevada Limited Liability Company; Best Products, LLC, a Nevada Limited Liability Company; MV Venture Partners V, LLC, a Delaware Limited Liability Company; and Amherst Technologies, LLC, a Nevada Limited Liability Company, Appellants,
v.
ARIBA, INC., and Tradex Technologies, Inc., Appellees.
No. 2D05-4908.
District Court of Appeal of Florida, Second District.
June 6, 2007.
*524 Kenneth P. McDuffie and Mary A. Palma of Nall & Miller, LLP, Atlanta, GA, and Aubrey O. Dicus, Jr., and Mark P. Stopa of Battaglia, Ross, Dicus & Wein, P.A., St. Petersburg, for Appellants.
John R. Blue, Sylvia H. Walbolt, and Thomas J. Roehn of Carlton Fields, P.A., Tampa, and John Eichhorst and Jason M. Skaggs of Howard Rice Nemerovski Canady Falk & Rabkin, San Francisco, CA, for Appellees.
LaROSE, Judge.
SourceTrack, LLC, and some of its investor members (collectively SourceTrack) *525 appeal a final judgment entered in favor of Ariba, Inc. (Ariba) and Tradex Technologies, Inc. (Tradex). SourceTrack raises four issues on appeal. We write to address SourceTrack's first issue, a challenge to the trial court's ruling on a motion in limine. We find it unnecessary to address in detail SourceTrack's remaining issues.[1] We affirm.

Relevant Facts
SourceTrack was a nascent internet provider of purchasing services for businesses. In late 1999, it licensed from Tradex software necessary to conduct its business. The software licensing agreement (SLA) prevented SourceTrack from assigning or transferring its license rights without Tradex's consent. In March 2000, Ariba acquired Tradex through a stock acquisition. Tradex became an Ariba subsidiary but ceased to operate. Its employees became Ariba employees. Tradex survived as a shell corporation.
No written document formally assigned the SourceTrack SLA with Tradex to Ariba. But, after Ariba acquired Tradex, SourceTrack dealt directly with Ariba on matters relating to the SLA. SourceTrack treated Ariba as a party to the SLA, made payments under the SLA to Ariba, and subsequently acknowledged that Ariba was a party to the SLA. Tradex did not object to this course of dealing.
In late 2000, SourceTrack began merger discussions with another company, Alliente. Alliente asked Ariba to assign the SLA to Alliente. Ariba never consented to such an assignment. Nevertheless, negotiations between SourceTrack and Alliente continued, albeit without success. Financially strapped, SourceTrack ceased operations in April 2001.
In September 2001, SourceTrack sued Ariba and Tradex on various theories, including breach of contract and tortious interference. Prior to trial, Ariba and Tradex filed a motion in limine seeking to prevent SourceTrack from presenting any evidence or argument that Ariba had not obtained Tradex's rights under the SLA. The trial court granted the motion.

Issue
SourceTrack argues that the trial court erred in granting the motion in limine. According to SourceTrack, the ruling was tantamount to granting a partial summary judgment in favor of Tradex and Ariba. SourceTrack contends that the trial court erroneously based its ruling on an equitable assignment or an equitable estoppel theory. In SourceTrack's view, the inlimine ruling eviscerated its key claims and unduly prejudiced it throughout the month-long jury trial. After deliberating for approximately ninety minutes, the jury rendered a verdict rejecting each of SourceTrack's claims.

Analysis
As far as our record reflects, SourceTrack did not raise in the trial court its contention that the in-limine ruling impermissibly granted a partial summary *526 judgment.[2] Consequently, SourceTrack waived the argument for appeal. See Watson v. State, 633 So.2d 525, 526 (Fla. 2d DCA 1994); Shofner v. Giles, 579 So.2d 861, 862 (Fla. 4th DCA 1991). Moreover, absent a transcript of the hearing on the motion in limine, we must affirm a ruling that is not fundamentally erroneous on its face. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla. 1979); In re Read, 555 So.2d 869, 871 (Fla. 2d DCA 1989).
Unquestionably, there was no written assignment of the SLA from Tradex to Ariba. It is equally undisputed that after Ariba acquired Tradex, Tradex ceased to operate. Thereafter, SourceTrack dealt exclusively with Ariba concerning the SLA, paid Ariba under the SLA, and acknowledged that Ariba was a party to the SLA. SourceTrack argues, however, that Ariba and Tradex offered no evidence of their intent to assign the SLA and relied solely on SourceTrack's dealings with Ariba to establish an equitable assignment. The extensive record before us reflects no trial court error.
A court may find an equitable assignment where necessary to effectuate the parties' plain intent or to avoid injustice. Giles v. Sun Bank, N.A., 450 So.2d 258, 260 (Fla. 5th DCA 1984). "No particular words or form of instrument is necessary to effect an equitable assignment and any language, however informal, which shows an intention on one side to assign a right . . . and an intention on the other to receive, if there is a valuable consideration, will operate as an effective equitable assignment." Id. Giles found an equitable assignment in the context of an employment agreement where "[a]ll parties . . . treated the arrangement as an assignment." Id. at 261. We find ample record support for the trial court's finding of an equitable assignment of the SLA. SourceTrack's dealings with Ariba reflected its understanding that Ariba now held the SLA. These dealings, to which Tradex did not object, coupled with Tradex's cessation of operation, support the conclusion that Ariba and Tradex intended that Ariba would acquire rights under the SLA.
Because the record supports the granting of the motion in limine under an equitable assignment theory, we need not decide SourceTrack's equitable estoppel argument. However, the parties have confused this theory somewhat in their arguments to us. Thus, we take the opportunity to explain its application. Essentially, Ariba and Tradex argue that SourceTrack treated Ariba as a party to the SLA and was estopped to claim that Ariba was a stranger to the SLA. SourceTrack argues that it did not act fraudulently or misrepresent any material fact upon which Ariba and Tradex relied. Ariba and Tradex contend that fraud or misrepresentation are not necessary to establish equitable estoppel.
Both positions miss the mark as applied to our record. Equitable estoppel requires that: (1) the party against whom estoppel is sought made a representation about a material fact that is contrary to a position it later asserts, and (2) the party seeking estoppel detrimentally relied on that representation. See Watson Clinic, LLP v. Verzosa, 816 So.2d 832, 834 (Fla. 2d DCA 2002).
Estoppel is designed to prevent fraud and injustice. 22 Fla. Jur.2d Estoppel *527 and Waiver §§ 31, 74 (2007). In contrast, waiver is the intentional relinquishment, express or implied, of a known right. Thomas N. Carlton Estate, Inc. v. Keller, 52 So.2d 131, 133 (Fla.1951). Although closely related, the doctrines of estoppel and waiver frequently are confused. Id. at 132-33. Waiver operates to "estop" one from asserting that upon which he otherwise might have relied, but it is not a true estoppel. Arbogast v. Bryan, 393 So.2d 606, 608 (Fla. 4th DCA 1981). Waiver does not require detrimental reliance. See Fireman's Fund Ins. Co. v. Vogel, 195 So.2d 20, 24 (Fla. 2d DCA 1967); Goodwin v. Blu Murray Ins. Agency, Inc., 939 So.2d 1098, 1104 (Fla. 5th DCA 2006); Taylor v. Kenco Chem. & Mfg. Corp., 465 So.2d 581, 587 (Fla. 1st DCA 1985). None of the parties articulated precisely these distinctions. Yet, it is semantically more correct to view SourceTrack's conduct toward Ariba, as reflected in the record, as a waiver of its right to assert that there was no assignment of the SLA.

Conclusion
The trial court did not abuse its discretion in granting the motion in limine. Further, its rulings on SourceTrack's proposed jury instructions and on the claims of the investor members were correct. Accordingly, we affirm.
Affirmed.
KELLY and CANADY, JJ., concur.
NOTES
[1] In addition to challenging the ruling on the motion in limine, SourceTrack argues that the trial court erroneously refused to give special jury instructions it requested. As a whole, the given jury instructions fairly stated the applicable law; the trial court's refusal to give SourceTrack's requested instructions was not an abuse of discretion. See Barbour v. Brinker Fla., Inc., 801 So.2d 953, 959 (Fla. 5th DCA 2001). Similarly, the trial court committed no error in granting a directed verdict on SourceTrack's individual members' claims against Ariba. The members failed to establish injury to them that was unique and distinct from any injury suffered by SourceTrack. See Checkers Drive-In Rests., Inc. v. Tampa Checkmate Food Servs., Inc., 805 So.2d 941, 944 (Fla. 2d DCA 2001); Braun v. Buyers Choice Mortg. Corp., 851 So.2d 199, 203 (Fla. 4th DCA 2003).
[2] SourceTrack urges us to review the trial court's ruling de novo. Generally, however, we review rulings on motions in limine for an abuse of discretion. See Dessaure v. State, 891 So.2d 455, 466 (Fla.2004) (citing State v. Polak, 598 So.2d 150 (Fla. 1st DCA 1992)); Golden Yachts, Inc. v. Hall, 920 So.2d 777, 780 (Fla. 4th DCA 2006).